UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES R. AHO                :  | |
|                             :  | PRISONER |
| v.                          :  | Case No. 3:03CV1552(SRU)(WIG) |
|                             :  | |
| SHEILA HUGHES, R.N., ET AL. :  | |

RULING ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

James Aho filed this civil rights action pro se and in forma pauperis pursuant to 28 U.S.C. § 1915, naming Dr. Carson Wright, Sheila Hughes, R.N., Correctional Hospital Nursing Supervisor Patricia Wollenhaupt and Commissioner Theresa Lantz as defendants. He alleges inter alia that the defendants failed to provide him with adequate medical care for a fracture of his left hand. The defendants have moved for summary judgment. For the reasons that follow, the motion for summary judgment is granted.

I.      Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that he is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . ." Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted). A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present significant probative evidence to create a genuine issue of material fact. A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991). See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992). A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements. See Securities & Exchange Comm'n v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978). Nor may he rest on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). See also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).

Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Despite this liberal interpretation, however, a "bald assertion" unsupported by evidence, cannot overcome a properly supported motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

II.     Facts[1]

On June 23, 2003, at Northern Correctional Institution ("Northern"), the plaintiff was involved in an a fight with his cellmate. In defending himself, the plaintiff injured his left hand. The plaintiff experienced pain and swelling in his left hand. A nurse examined the plaintiff's hand and observed swelling and redness in the outer portion of the left hand and an open wound near the thumb. The nurse provided the plaintiff with ice and defendant Wright, a staff physician at Northern, prescribed an antibiotic and pain medication and referred the plaintiff for an x-ray. The plaintiff underwent an x-ray of his left hand on June 24, 2003. On June 27, 2003, the radiologist reported that the plaintiff had fractured his distal left fifth metacarpal. A nurse applied a splint to the fourth and fifth digits of the plaintiff's left hand to stabilize them until the plaintiff could be seen by a doctor on June 30, 2003.

On June 28, 2003, the plaintiff refused to accept another cellmate and prison officials

---

[1] The facts are taken from defendants' Local Rule 56(a)1 Statement [doc. #15-1] and the Affidavits of Carson Wright, Sheila Hughes, Augustus Mazzocca, Patricia Wollenhaupt, Scott Salius and Theresa Lantz and the exhibits attached to the Affidavits [docs. ## 15-4, 15-5, 15-6, 15-7, 15-8, 15-9, 15-10, 15-11, 15-12, 15-13, 18-1, 18-3], as well as from the Affidavits and Responses of James R. Aho [docs. ## 17-2, 17-3, 17-4, 17-5, 17-6, 17-10] and the exhibits attached thereto [docs. ## 17-7, 17-8, 17-9]. Although the parties' affidavits differ on certain details, the differences do not amount to genuine issues of material fact.

placed him on in-cell restraint status. The restraints were applied to plaintiff's ankles and wrists. The medical staff checked the plaintiff's restraints periodically to make sure they were not too tight. The medical staff reported no complaints from plaintiff regarding his left hand during his confinement in in-cell restraints. Prison staff removed the plaintiff from restraints on June 30, 2003.

The plaintiff saw defendant Wright later that afternoon. Defendant Wright reported that he could not have seen the plaintiff earlier because the facility was on lockdown status that morning. After consulting with an orthopedist at University of Connecticut Health Center ("UCONN") and Dr. Blanchette, defendant Wright ordered prison officials to transport plaintiff to the emergency room of the UCONN.

At UCONN, plaintiff underwent another x-ray of his left hand which confirmed the fracture of the distal left fifth metacarpal. The medical staff attempted a reduction of the fracture, but it was not successful. Medical staff then applied a fiberglass ulnar gutter splint to the plaintiff's left hand and discharged the plaintiff to the Department of Correction.

On July 2, 2003, defendant Wright examined the plaintiff's left hand, ordered an x-ray and increased the plaintiff's pain medication. On July 6, 2003, defendant Wollenhaupt received a request for another x-ray from the plaintiff. Defendant Wollenhaupt responded that an x-ray would be scheduled in the near future. On July 8, 2003, after examining plaintiff's left hand, defendant Wright ordered an x-ray and indicated that he would discuss the plaintiff's complaints with the medical staff at the Orthopedic Clinic. On July 15, 2003, the plaintiff underwent another x-ray. The x-ray revealed the same fracture of the fifth distal metacarpal bone. On August 6, 2003, in response to an inmate request from the plaintiff defendant Wright informed

the plaintiff that the July 15, 2003 x-rays revealed the same fracture of his left hand and that he had submitted a request to the Utilization Review Committee ("URC") for an orthopedic consultation.

On August 7, 2003, defendant Wright spoke with Ms. Livingston in the Orthopedic Clinic at UCONN regarding the plaintiff's fracture and she recommended that the plaintiff be seen in the Clinic. Later that day, defendant Wright submitted a request to the URC for an orthopedic consultation. On August 14, 2003, defendant Wright examined the plaintiff's left hand, changed the bandage and dressing on the hand and noted that he was waiting for the URC's decision. On August 19, 2003, the URC recommended that defendant Wright order more x-rays of the plaintiff's left hand to assess healing, instruct the plaintiff in range of motion exercises and restrict the plaintiff from working or playing sports.

On August 22, 2003, defendant Hughes received a Level 1 grievance from the plaintiff. That same day, defendant Hughes responded to the grievance indicating that the plaintiff had seen defendant Wright on August 19, 2003, and had discussed the URC's report at that time. On August 21, 2003, the plaintiff filed an Level 2 grievance form. On September 3, 2003, the Health Services Administrator denied the grievance because defendant Wright had addressed the plaintiff's concerns when he met with the plaintiff on August 19, 2003. The Health Services Administrator indicated that the decision could not be appealed to Level 3.

On August 27, 2003, the plaintiff underwent another x-ray of his left hand. The x-ray revealed that the fracture was healing and there was no change in the position or alignment of the bones since the previous x-ray. On September 4, 2003, defendant Wollenhaupt faxed the x-ray report to the URC and put a copy of the x-ray report in defendant Wright's box.

Sometime in August 2003, a major or captain at Northern asked Lieutenant Salius to check the status of the plaintiff's injury to his left hand. Lieutenant Salius understood that the plaintiff's father had contacted someone from the central office of the Department of Correction or the office of the warden at Northern concerning the adequacy of the treatment the plaintiff had received for his hand injury. Lieutenant Salius spoke to one of the nurses who reviewed the plaintiff's medical file. Lieutenant Salius then informed the plaintiff that the medical staff had been monitoring his progress.

On September 9, 2003, defendant Wright examined the plaintiff and noted that the fracture was healing and ordered that an x-ray be taken with the cast/splint off. On September 11, 2003, the plaintiff underwent another x-ray of his left hand. The x-ray revealed a healed fracture of the fifth metacarpal bone. On September 15, 2003, defendant Wright spoke to a Ms. Pacelia at the Orthopedic Clinic and she recommended that the plaintiff be seen in the Clinic if he continued to complain of pain in the left hand.

On September 18, 2003, defendant Wright met with the plaintiff and informed him of the results of the x-rays. Defendant Wright opined that the splint should be removed and provided the plaintiff with an Ace bandage to use after removal of the splint. Defendant Wright reported that the plaintiff was very resistant to removing the splint. Defendant Wright recommended that the plaintiff begin range of motion exercises and ordered that the plaintiff undergo an x-ray without the splint.

On September 23, 2003, defendant Wright informed the plaintiff that he must continue to perform range of motion exercises and noted that an x-ray had been taken without the splint.

On September 25, 2003, defendant Wright discussed results of recent x-rays with the

plaintiff. The x-rays showed that the fracture was healed, but there was some demineralization of the bone. Defendant Wright told plaintiff he must remove the splint and perform range of motion exercises to prevent demineralization of the bone. Later that day, Defendant Wright submitted another request to the URC for an orthopedic consultation.

On September 26, 2003, the plaintiff signed the complaint and presumably handed his complaint and in forma pauperis application to prison officials for mailing. The court received the complaint on October 10, 2003.

On October 1, 2003, defendant Wright discussed the September x-rays with the plaintiff and again informed the plaintiff that he must take off the splint and perform the range of motion exercises. The plaintiff refused to remove the splint. Defendant Wright consulted with the Orthopedic Clinic regarding the demineralization of the bone in plaintiff's hand. The medical staff at the Clinic recommended that the plaintiff take Calcium Carbonate. Defendant Wright prescribed Calcium Carbonate tablets and pain medication.

On October 15, 2003, the URC concluded that the x-rays showed adequate healing and that the plaintiff must begin to move his hand and perform exercises to avoid long-term pain and disability. The URC recommended that the splint be taken from the plaintiff. That same day, defendant Wright discussed URC's decision with the plaintiff, encouraged the plaintiff to exercise his hand and took the splint away from plaintiff.

On October 20, 2003, defendant Wright spoke with Dr. Mazzocca in the Orthopedic Clinic. Dr. Mazzocca recommended that the plaintiff continue to perform range of motion exercises and that he need not be examined in the orthopedic clinic. Dr. Mazzocca also indicated that the plaintiff might develop a bump on his hand at the site of the fracture and might have

occasional tenderness in the area.

On October 22, 2003, defendant Wright noted that the plaintiff had made progress and was able to flex and extend his fourth and fifths digits on his left hand. On January 14, 2004, the plaintiff reported that he was able to move his hand without a problem and the fracture site was not tender or painful.

III.   Discussion

The defendants raise three grounds in support of their motion for summary judgment. The defendants argue that: (1) the Eleventh Amendment bars any official capacity claims for monetary damages, (2) the complaint fails to state a claim under the Eighth Amendment and (3) they are protected by qualified immunity.

As a preliminary matter, the court considers the plaintiff's requests to strike some or all of the affidavits submitted by the defendants in support of their motion for summary judgment. The requests are included in his memorandum in opposition to the motion for summary judgment. He contends that the affidavits are false and relies on a Connecticut Supreme Court case in support of his request that the court strike the affidavits.

Motions to strike "are not favored." Schramm v. Kirschell, 84 F.R.D. 294, 299 (D. Conn. 1979). In this case, the plaintiff seeks to strike all or portions of defendants' affidavits. The court has reviewed the affidavits submitted by the defendants and concludes that they were "made on personal knowledge" and the affiants were competent to testify to the facts in the affidavits at trial. Fed. R. Civ. P. 56(e). In addition, the affidavits were not "presented in bad

faith." Fed. R. Civ. P. 56(g).[2]  Accordingly, the request to strike the defendants' affidavits is denied.

    A.    <u>Eleventh Amendment</u>

The plaintiff seeks injunctive relief and monetary damages from the defendants in both their official and individual capacities. The defendants contend that the Eleventh Amendment bars a damage award against the defendants in their official capacities.

Generally, a suit for recovery of money may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its sovereign immunity under the Eleventh Amendment. <u>See</u> <u>Florida Dep't of State v. Treasure Salvors</u>, 458 U.S. 670, 684 (1982). Section 1983 does not override a state's Eleventh Amendment immunity. <u>See</u> <u>Quern v. Jordan</u>, 440 U.S. 332, 342 (1979). The Eleventh Amendment immunity which protects the state from suits for monetary relief also protects state officials sued for damages in their official capacities. <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159 (1985). A suit against a defendant in his official capacity is ultimately a suit against the state if any recovery would be expended from the public treasury. <u>See</u> <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 101 n.11 (1984).

---

[2] The plaintiff contends that defendant Wollenhaupt failed to acknowledge in her first affidavit [doc. # 15-10] that she had been in contact with him after July 2003, regarding his left hand injury. In the first affidavit, defendant Wollenhaupt acknowledged two inmate requests from the plaintiff dated in July 2003. The allegations in the plaintiff's complaint cover a time period from June 2003 through September 26, 2003, the day the plaintiff filed this action. The plaintiff has not submitted any evidence that defendant Wollenhaupt had any contact with him after the end of July 2003. The new documents attached to plaintiff's response to defendant Wollenhaupt's affidavit are dated in October and November 2003. (<u>See</u> doc. # 17-10.) Thus, defendant Wollenhaupt's first affidavit appears accurate as it relates to the time period encompassed in the complaint. In addition, defendant Wollenhaupt filed a supplemental affidavit addressing the documents from October and November 2003. (<u>See</u> doc. # 18-3.)

The plaintiff's claims for monetary damages against the defendants in their official capacities are barred by the Eleventh Amendment. Defendants' motion for summary judgment is granted with respect to all claims for damages against the defendants in their official capacities.

B.     Eighth Amendment Claim

The defendants argue that they were not deliberately indifferent to the plaintiff's fractured left hand. The plaintiff argues that there are disputed issues of fact that preclude a finding that the defendants were not deliberately indifferent to his fractured hand.

The Eighth Amendment protects inmates from deliberate indifference by prison officials to their serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). To prevail on such a claim, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. A prisoner must show intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel. See id. at 104-05. Mere negligence will not support a section 1983 claim. McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988).

The civil rights statute was not meant to redress medical malpractice claims that can be adequately resolved under state tort law. Tomarkin, 534 F. Supp. at 1230-31. Thus, a claim of misdiagnosis, faulty judgment, or malpractice without more to indicate deliberate indifference, is not cognizable under section 1983. See McCabe v. Nassau County Medical Center, 453 F.2d 698, 704 (2d Cir. 1971); Tomarkin v. Ward, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982). In addition, mere disagreement with prison officials about what constitutes appropriate medical care does not state a claim cognizable under the Eighth Amendment. See Hyde v. Mcinnis, 429 F.2d 864, 868 (2d Cir. 1970); Corby v. Conboy, 457 F.2d 251, 254 (2d Cir. 1972); Ross v. Kelly, 784

F. Supp. 35, 44 (W.D.N.Y.), aff'd, 970 F.2d 896 (2d Cir.), cert. denied, 506 U.S. 1040 (1992).

There are both subjective and objective components to the deliberate indifference standard. See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995). The alleged deprivation must be "sufficiently serious" in objective terms. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d. Cir. 1998) (citation omitted). In addition, where the denial of treatment causes plaintiff to suffer a permanent loss or life-long handicap, the medical need is considered serious. See Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000).

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, an inmate also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind." Hathaway, 37 F.3d at 66. "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

The defendants do not contest the fact that the fracture to plaintiff's left hand was a serious medical need. The defendants do contend, however, that they were not deliberately

indifferent to that serious medical need. Thus, the court addresses only the subjective prong of the Eighth Amendment standard.

The plaintiff's medical records reflect that he sustained an injury to his left hand on June 23, 2003. Dr. Wright prescribed an antibiotic and pain medication and referred the plaintiff for an x-ray. An x-ray taken on June 24, 2003, revealed a fracture to the fifth distal metacarpal of the plaintiff's left hand. On June 27, 2003, a nurse placed the plaintiff's hand in a splint and placed him on the list to see a physician. On June 30, 2003, defendant Wright examined the plaintiff. After conferring with an orthopedist and Dr. Blanchette, defendant Wright issued an order directing prison officials to transport the plaintiff to the emergency room at UCONN for treatment.

At the hospital, the plaintiff underwent additional x-rays which confirmed the fracture of the fifth metacarpal bone in the plaintiff's left hand. A physician attempted to reduce the fracture without success and then issued an order for a fiberglass splint to be applied to plaintiff's left hand. The plaintiff returned to Northern Correctional Institution later that day. From that day until the end of October 2003, defendant Wright examined the plaintiff on numerous occasions, issued orders for follow-up x-rays, prescribed pain medication, urged plaintiff to perform various range of motion exercises for his hand and submitted several requests to the URC for orthopedic consultations. Defendant Wollenhaupt responded to plaintiff's inmate requests for x-rays and forwarded x-rays to the URC for review. Defendant Hughes processed and responded to plaintiff's grievance concerning treatment of his left hand injury. Defendant Lantz's office responded to the inquiry from plaintiff's father concerning plaintiff's injury.

Approximately two months after the plaintiff fractured his hand, x-rays revealed that the

fracture had started to heal. Within four months of the date of the fracture, the plaintiff reported that he could extend and bend the fourth and fifth digits on his left hand.

The plaintiff principally complains that he should have been sent to the hospital sooner, should have seen Dr. Wright earlier, and should have had surgery on his broken hand. These are complaints about the appropriateness of the care he received. Inmates do not have a constitutional right to the treatment of their choice. See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986). Thus, mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment. See Ross v. Kelly, 784 F. Supp. 35, 44 (W.D.N.Y.), aff'd, 970 F.2d 896 (2d Cir.), cert. denied, 506 U.S. 1040 (1992).

No reasonable jury could find that the defendants were deliberately indifferent to the fracture of plaintiff's left hand during the period of time encompassed in the complaint.[3] The motion for summary judgment is granted on the ground that the plaintiff has failed to state a claim upon which relief may be granted under the Eighth Amendment.

C.     Grievance Procedure

The plaintiff includes allegations in his complaint that defendant Hughes, as the Level 1 Grievance Coordinator, violated the Administrative Directive governing grievance procedures by

---

[3] In plaintiff's response to defendant Wright's affidavit, he raises for the first time, a claim that he broke his wrist as well as his hand on June 23, 2003. In support of this claim he submits an x-ray which in his opinion shows evidence of a fracture of his wrist. There are no allegations in the complaint concerning an injury to his wrist. The plaintiff cannot amend his complaint in his memorandum and or response to defendants' motion for summary judgment. See Natale v. Town of Darien, No. CIV. 3:97CV583 (AHN), 1998 WL 91073, at *4 n. 2 (D. Conn. Feb. 26, 1998) (holding plaintiff may not amend complaint in memorandum of law) (citing Daury v. Smith, 842 F.2d 9, 15-16 (1st Cir. 1988)); Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc., 723 F. Supp. 976, 987 (S.D.N.Y. 1989) (same). Thus, the court does not consider the claim that plaintiff broke his wrist.

attempting to respond to his Level 2 and Level 3 appeals. The defendants argue that any claim by the plaintiff that defendant Hughes failed to comply with the procedures set forth in Administrative Directive 9.6 is not cognizable.

This district has previously held that failure of a correctional official to comply with the institutional grievance procedures is not cognizable in an action filed pursuant to 42 U.S.C. § 1983, unless the action caused the denial of a constitutionally or federally protected right. See Fernandez v. Armstrong, Case No. 3:03-cv-583 (JCH) (D. Conn. Dec. 7, 2004); Ruocco v. Tung, No. 3:02cv1443(DJS), 2004 WL 721716, at *14 (D. Conn. Mar. 30, 2004); Hunnicutt v. Armstrong, 305 F. Supp. 2d 175, 188 (D. Conn. 2004) (grievance procedure).

The court has determined that the defendants were not deliberately indifferent to plaintiff's hand injury. Thus, the plaintiff has not identified any constitutionally or federally protected right that was violated by defendant Hughes' alleged failure to comply with Department of Correction's grievance procedures. Any claim that defendant Hughes failed to comply with administrative directives does not demonstrate the denial of a constitutionally or federally protected right. Accordingly, such a claim is not cognizable in this civil rights action. The defendants' motion for summary judgment is granted with respect to any claim for failure to follow institutional grievance procedures.

    D.    Qualified Immunity

The defendants also argue that they are entitled to qualified immunity. Because the court has granted the motion for summary judgment on another ground, the court need not reach this argument.

IV.	Conclusion

The defendants' Motion for Summary Judgment [**doc. #15**] is **GRANTED**.  The Clerk is directed to enter judgment in favor of the defendants and close this case.

SO ORDERED this   30th     day of    September     2005, at Bridgeport, Connecticut.


             /s/_____
                        Stefan R. Underhill
                        United States District Judge